TRINA A. HIGGINS, United States Attorney (#7349)
ADAM S. ELGGREN, Assistant United States Attorney (#11064)
CY H. CASTLE, Assistant United States Attorney (#4808)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682
Email: adam.elggren@usdoj.gov

FILED US District Court-UT
SEP 21 '22 PM 02:42

SEALED

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| UNITED STATES OF AMERICA, | INDICTMENT |
|---|---|
| Plaintiff, | |
| vs. | Counts 1-6: 18 U.S. C. § 1343, Wire Fraud |
| DARREN ROSENSTEIN, | Counts 7-11: 18 U.S. C. § 1957, Money Laundering |
| Defendant. | |
| | Case: 2:22-cr-00352 |
| | Assigned To : Parrish, Jill N. |
| The Grand Jury Charges: | Assign. Date : 9/20/2022 |

## BACKGROUND

At all times relevant to this Indictment:

1. DARREN ROSENSTEIN was a resident of Utah, residing principally in Salt Lake County.

2. ROSENSTEIN was the owner and sole proprietor of Structural Integrity, LLC, Structural Integrity Engineering, Inc., and Sandy Real Estate Holding, LLC, Utah corporations; and CDFI Investments, LLC, a California corporation.

The Small Business Administration

3. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small business and by assisting in the economic recovery of communities after disasters.

4. As part of this effort, the SBA facilitated loans through banks, credit unions, and other lenders. The federal government backed these loans. The SBA also directly provided some loans.

The Economic Injury Disaster Loan Program

5. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $10 billion to expand the SBA's Economic Injury Disaster Loan (EIDL) program.

6. In order to obtain an EIDL, a qualifying business was required to submit a loan application to the SBA signed by an authorized representative of the business. The EIDL application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the loan.

7. If approved as a borrower, the EIDL applicant would enter into a loan agreement with the SBA. EIDL applications and agreements are processed, and loans funded, by the SBA. Data in the application and agreement, including background information about the applicant and the certifications required to be made by the applicant, were transmitted by wire to the SBA in the course of processing the loan.

Required Certifications and Limits on Use of Funds

8. EIDL proceeds were required to be used by the business on certain permissible expenses, including working capital and other normal operating expenses as described on the SBA's website and in the EIDL documents, which include a loan application and, if approved, a loan agreement.

9. The SBA's website read, in pertinent part:

> Uses of Proceeds
>
> Working capital to make regular payments for operating expenses, including payroll, rent/mortgage, utilities, and other ordinary business expenses…

10. The loan agreements read, in pertinent part:

> USE OF LOAN PROCEEDS
>
> Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter…

11. EIDL applications required applicants to make a number of factual certifications and assertions, under penalty of perjury, in order to be eligible for a loan under the

3

program. One such assertion was to the "Gross Revenues for the Twelve(12) Month Prior to the Date of the Disaster (January 31, 2020)".

12. Borrowers were required to attest to the truthfulness of their application upon penalty of perjury, and were given warnings about the possible civil and criminal penalties that could apply. They were also required to agree, with the same warnings, to abide by all the terms of the agreement, including, explicitly, not to misapply the proceeds of the loan.

## COUNTS 1-6
## 18 U.S.C. § 1343
## (Wire Fraud)

The Scheme to Defraud:

13. Paragraphs 1-12 are incorporated herein by reference.

14. Beginning in or around April 2020 and continuing until in or around May 2022, in the District of Utah and elsewhere, defendant DARREN ROSENSTEIN, knowingly and with intent to defraud, devised and executed a scheme and artifice to obtain monies, funds, credits, assets and other property owned by and in the custody and control of the SBA by means of materially false and fraudulent pretenses, representations and promises, and the concealment of material facts.

15. The fraudulent scheme operated and was carried out, in substance, as follows:

    a. Defendant ROSENSTEIN created loan applications under the EIDL program for his various businesses, including, but not limited to, Structural Integrity Engineering, Inc., and CDFI Investments, LLC. ROSENSTEIN

made materially false representations and promises on the applications in order to induce the SBA to approve his businesses for EIDL loans. One such representation was that his business CDFI Investments, LLC had gross revenues in the amount of $1,766,765 in the 12 months leading up to January 31, 2020, when, in fact, the company's revenues, if any, were significantly lower, which representation ROSENSTEIN knew to be false at the time he made it.

b. Defendant ROSENSTEIN entered into loan agreements with the SBA and made further materially false representations and promises in order to induce the SBA to fund the loan, including, but not limited to, attestations on loan agreements for Structural Integrity Engineering, Inc. and CDFI Investments, LLC that he would "use all the proceeds of [the loans] solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter…", which ROSENSTEIN knew to be false attestations at the time he made them.

c. Defendant ROSENSTEIN then received the funds and failed to use them for the legitimate business expenses described on the website and in the agreements, but instead used them for non-legitimate purposes including, but not limited to, the purchase of an automobile and boat for his personal use, transfers into other bank accounts he controls, and deposits into a stock account for his personal benefit.

Execution of the Scheme – Use of Wires:

16. Paragraphs 1-15 are incorporated herein by reference.

17. On or about the following dates, in the District of Utah and elsewhere,

DARREN ROSENSTEIN,

defendant herein, for the purpose of executing and attempting to execute the above-described scheme to defraud, transmitted and caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | USE OF INTERSTATE WIRES | DESCRIPTION |
|---|---|---|---|
| 1 | 5/6/2020 | Application number …4583 transmitted via Internet to SBA by ROSENSTEIN on behalf of CDFI Investments, LLC for a loan in the amount of $150,000 | EIDL program application wherein ROSENSTEIN falsely attested that CDFI Investments, LLC had $1,766,765 in gross revenues in the 12 months prior to January 31, 2020 |
| 2 | 5/17/2020 | Loan agreement #…7407 transmitted via Internet to SBA by ROSENSTEIN on behalf of CDFI Investments, LLC for a loan in the amount of $150,000 | EIDL loan agreement between ROSENSTEIN and SBA wherein ROSENSTEIN falsely attested he would use the loan proceeds for legitimate operating expenses |
| 3 | 5/19/2020 | Wiring of funds in the amount of $149,900 from SBA to JP Morgan Chase Bank, NA account ending in …6927 owned by CDFI Investments, LLC | Wire of funds (less $100 fee) induced by ROSENSTEIN'S false attestations on the application and agreement for the CDFI Investments, LLC EIDL regarding overstatement of revenue and use of loan proceeds |
| 4 | 5/23/2020 | Loan agreement #...7209 transmitted via Internet to SBA by ROSENSTEIN on behalf of Structural Integrity Engineering, Inc. for a loan in the amount of $500,000 | EIDL loan agreement between ROSENSTEIN and SBA wherein ROSENSTEIN falsely attested he would use the loan proceeds for legitimate operating expenses |

| 5 | 6/23/2020 | Wiring of funds in the amount of $499,900 from SBA to JP Morgan Chase Bank, N.A. account ending in …5010 owned by Structural Integrity Engineering, Inc. | Wire of funds (less $100 fee) induced by ROSENSTEIN'S false attestations on the agreement for the Structural Integrity Engineering, Inc. EIDL regarding use of loan proceeds |
| 6 | 6/30/2020 | Wiring of funds in amount of $10,000 from SBA to JP Morgan Chase Bank, N.A. account ending in …5010 owned by Structural Integrity Engineering, Inc. | Wire of funds for a $10,000 loan "advance" by SBA in conjunction with $500,000 loan in Counts 4 and 5 above, induced by ROSENSTEIN'S false attestations on the agreement regarding use of loan proceeds |

all in violation of 18 U.S.C. § 1343.

## COUNTS 7-11
## 18 U.S.C. § 1957
## (Money Laundering)

18. Paragraphs 1-17 are incorporated herein by reference.

19. On or about the dates listed below, in the District of Utah and elsewhere,

DARREN ROSENSTEIN,

Defendant herein, did engage and attempt to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, in the manner described below, such property having been derived from a specified unlawful activity, that is, Wire Fraud in violation of 18 U.S.C. § 1343, as alleged in Counts 4-6 above, which counts are incorporated herein by reference:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| 7 | 8/31/2020 | Wire transfer in the amount of $49,000 from JP Morgan Chase Bank, NA account #...5010 controlled by DARREN ROSENSTEIN to Bayport Yachts, Inc. |
| 8 | 11/23/2020 | Wire transfer in the amount of $49,850.66 from JP Morgan Chase Bank, NA account #...5010 controlled by DARREN ROSENSTEIN to Garff JLR II, LLC |
| 9 | 4/18/2022 | Transfer of $108,760 from JP Morgan Chase Bank, NA account #...2033 (JPMC Securities CDFI Investments) to JP Morgan Chase Bank, NA account #...6927, both controlled by DARREN ROSENSTEIN |
| 10 | 5/31/2022 | Transfer of $15,000 from JP Morgan Chase Bank, NA account #...6927 to JP Morgan Chase Bank, NA account #...6489 (Sandy Real Estate Holding, LLC), both controlled by DARREN ROSENSTEIN |
| 11 | 5/31/2022 | Transfer of $15,000 from JP Morgan Chase Bank, NA account #...6927 to JP Morgan Chase Bank, NA account #...9624 (Structural Integrity, LLC), both controlled by DARREN ROSENSTEIN |

all in violation of 18 U.S.C. § 1957, Money Laundering.

NOTICE OF INTENT TO SEEK FORFEITURE

20. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense violating 18 U.S.C. § 1343, the defendant(s) shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud. The property to be forfeited includes, but is not limited to:

- 2003 Chris Craft Corsair, 25-foot watercraft, Hull ID CCBLE134K203, with EZ Loader Trailer, SR# 1ZEZZNTG64A011198
- 2020 Land Rover Defender, VIN SALE9EEUXL2025428

- $109,078.38

- A money judgment equal to the value of any property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p).

- Substitute property as allowed by 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. § 1957, the defendants shall forfeit to the United States of America any property, real or personal, involved in such violations, and any property traceable to such property. The property to be forfeited includes, but is not limited to:

- 2003 Chris Craft Corsair, 25-foot watercraft, Hull ID CCBLE134K203, with EZ Loader Trailer, SR# 1ZEZZNTG64A011198

- 2020 Land Rover Defender, VIN SALE9EEUXL2025428

- $109,078.38

- A money judgment equal to the value of all property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p); and

- Substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

\

GRAND JURY'S PROBABLE CAUSE FINDING REGARDING FORFEITURE

The grand jury finds probable cause to believe that the listed defendants have committed the crimes specified in the above forfeiture notice and that the above properties listed for forfeiture (1) constitute or are derived from proceeds traceable to the wire fraud and (2) are connected to the money laundering crimes as property involved in such crimes or property traceable to the property involved in such crimes.

A TRUE BILL:

_____
FOREPERSON OF GRAND JURY

TRINA A. HIGGINS
United States Attorney

_____
ADAM S. ELGGREN
Assistant United States Attorney